# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Tammie R. P.,[1]

                              Plaintiff,

         v.                              3:24-CV-1059
                                         (DNH/MJK)

Frank Bisignano
Commissioner of Social Security,

                              Defendant.

---

Justin Goldstein, Esq., for Plaintiff
Hugh D. Rappaport, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable David N. Hurd, U.S. District Judge:

## REPORT- RECOMMENDATION

Tammie P. brought this action under the Social Security Act (42

U.S.C. § 405(g)) seeking judicial review of the Social Security

Commissioner's final decision denying her application for benefits. (Dkt.

1). Tammie P. did not consent to the jurisdiction of a Magistrate Judge.

(Dkt. 4). So, the Honorable David N. Hurd, Senior U.S. District Judge,

---

[1] This Report and Recommendation will identify the plaintiff using only her first
name and last initial.

referred this matter to the Court for Report and Recommendation.[2]

Both parties filed briefs (Dkts. 13, 19, 20), which the Court treats as

motions under Fed. R. Civ. P. 12(c), in accordance with General Order

18.

## I.    PROCEDURAL HISTORY

On April 6, 2022, Tammie P. filed an application for Title XVI

Supplemental Security Income benefits, alleging disability beginning on

April 6, 2022. (T. 166-71).[3] The Social Security Administration denied

the claim initially on July 5, 2022, and again upon reconsideration on

October 26, 2022. (T. 50, 67). After a September 28, 2023 telephonic

hearing, Administrative Law Judge (ALJ) John Ramos issued an

unfavorable decision dated November 7, 2023. (T. 24).

## II.    GENERALLY APPLICABLE LAW

The Court need not repeat the five-step-sequential analysis that

ALJs use to evaluate Supplemental Security Income claims because

both parties are familiar with the standard. *See* 20 C.F.R. §§ 404.1520,

416.920; *see also Petrie v. Astrue,* 412 F. App'x 401, 404 (2d Cir. 2011)

---

[2] The District Court has the authority to refer dispositive motions to this Court under 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).
[3] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

(summary order). Likewise, the parties are both familiar with the substantial evidence standard: Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

## III.  FACTS

The record includes Tammie P.'s medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims, as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step-sequential analysis, the ALJ determined that Tammie P. "has not engaged in substantial gainful activity since April 6, 2022, the application date." (T. 19).

At step two, the ALJ determined that Tammie P. had the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), and obesity. (*Id.*)

At step three, the ALJ determined Tammie P. did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before reaching step four, the ALJ concluded that Tammie P. has the residual functional capacity ("RFC") to:

> perform a range of light work as defined in 20 C.F.R. 416.967(b) except she is unable to climb ladders, ropes, scaffolds, and she can only occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. The claimant should avoid exposure to concentrated respiratory irritants.

(T. 20).

In formulating this RFC, the ALJ considered Tammie P.'s symptoms and found that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (T. 21). The ALJ noted that the RFC was based on the opinion of Gregory Zito, M.D.

At step four, the ALJ found that Tammie P. "has no past relevant work," is "an individual closely approaching advanced age," and "has limited education." (T. 22-23) (cleaned up). The "transferability of job

skills is not an issue because" Tammie P. "does not have past relevant work." (T. 23) (cleaned up). Considering all the above, the ALJ reasoned that "there were jobs that existed in significant numbers in the national economy that" Tammie P. "could have performed." (*Id.*).

At step five, the ALJ determined that Tammie P. was not disabled, as defined by the Social Security Act, from the onset date through the decision date. (T. 24).

## V.    ISSUES IN CONTENTION

On appeal, Tammie P. argues that ALJ Ramos improperly evaluated the medical opinions of John Fkiaras, M.D. and Gregory Zito, M.D., by failing to articulate the supportability and consistency factors. (Pl. Br., at 6, 6-23). In opposition, the Commissioner argues that substantial evidence supports the ALJ's decision. (Def. Br. at 15).

## VI.   DISCUSSION

For the reasons below, the Court recommends affirming the ALJ's decision. Contrary to Tammie P.'s argument, the ALJ properly applied the Social Security Administration's regulations when analyzing the medical opinions, and Tammie P.'s subjective allegations. As a result, the Court finds that substantial evidence supports the ALJ's decision, and it should not be disturbed on appeal.

* * *

## A. State Agency Consultant Gregory Zito, M.D.

Dr. Zito, a state agency consultant who reviewed the record at the reconsideration level, opined that Tammie P. was not disabled. (T. 68). Based on his review of the medical evidence[4], Dr. Zito completed a physical RFC. (T. 61-67). Dr. Zito concluded that Tammie P. could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday and had unlimited ability to push and/or pull. (T. 62). Dr. Zito further opined that Tammie P. has postural limitations and  could occasionally climb ramps, stairs, ladders, ropes, scaffolds, stoop, kneel, crouch, and crawl. (T. 63). Dr. Zito explained that Tammie P.'s exertional and postural limitations were limited due to degenerative changes to her lumbar spine and COPD. (T. 63). Additionally, he opined that Tammie P.

---

[4] The Disability Determination Explanation completed by Dr. Zito indicated that he reviewed the following medical evidence: Uzma Abbasi M.D. with Oneida Health Care Clinics, Cazenovia CSD, Canastota Lenox Health Center, and the medical opinion from the consultative examiner John Fkiaras, M.D. dated October 12, 2022. (T. 282-85).

should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation because of her COPD. (T. 64).

Dr. Zito concluded that the medical opinion of John Fkiaras, M.D., consultative examiner, is more restrictive than his findings because:

> The opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion. The [consultative] examiner's opinion is an overestimate of the severity of the [Tammie P.]'s restrictions/limitations.

(T. 66).

Tammie P. contends that "the ALJ did not comply with the regulations when finding Dr. Zito's [prior administrative medical finding] more persuasive than Dr. Fkiaras' opinion." (Pl. Br. at 15). The ALJ's determination that Dr. Zito's findings were more persuasive than that of Dr. Fkiaras' findings is not inherently improper. *See Parent v. O'Malley*, 2024 WL 3342463, at *1-2 (2d Cir. 2024) (the ALJ did not act improperly when finding the opinions of non-examining consultants more persuasive than examining consultants).

Tammie P., seeking to undermine Dr. Zito's opinion, argues that the degenerative changes to her lumbar spine does not support Dr. Zito's listed non-exertional limitations. (Pl. Br. at 15). But "a non-

examining state agency consultant's opinion may be relied upon where it is supported by other record evidence." *Antonio V. v. Dudek*, No. 3:23-CV-1006 (MJK), 2025 WL 894955 at *11 (N.D.N.Y Mar. 21, 2025) (cleaned up).

The ALJ found Dr. Zito's opinion most persuasive because "in support of [his] opinion, he cited COPD treated with an inhaler" and "x-rays showing mild and moderate degenerative changes." (T. 21). Additionally, "[t]he opinion [was] consistent with other records that described no numbness and tingling of the legs[;]" "with records that describe nearly full range of motion of the lumber spine" and "is consistent with records that indicate the claimant should exercise regularly." (*Id.*) Finally, the ALJ noted that this opinion was most persuasive because Dr. Zito "reviewed the record, and he has program and professional expertise." (*Id.*) In support of his opinion, Dr. Zito cited, relevant to Tammie P.'s complaints, an Oneida Health care visit on March 24, 2022, where Tammie P.'s COPD was treated with an inhaler and Tammie P.'s activities of daily living, noting that Tammie P. is

> liv[ing] with her mother to help care for her, manag[ing] her own personal care needs, prepar[ing] simple meals, performs

light household chores, gets around by walking or rides, shops by phone, and manages money. She report[ed] difficulty with lifting, bending, standing, walking, kneeling, stair climbing, and completing tasks due to joint pain, back pain, knee pain, and COPD. She report[ed] using braces for her knees since July 2021.

(T. 64-65); *see also* T. 219-226.

Dr. Zito also cited to Dr. Fkiaras' October 12, 2022 consultative examination, and summarized the report noting that Tammie P.

reported low back pain since 2007 which radiates to the bilateral [lower extremities], she takes [over-the-counter] medication for relief, COPD for past two years with nighttime symptoms and Albuterol use, hyperthyroidism, hypertension, burns to [the] right [upper extremity] about 1.5 years ago, bilateral knew pain for past three years, [over-the-counter] medication provides mild relief. Current Medications: Levothyroxine 150mcg; Lovastain 40mg; Aspirin 81mg; Losartan 25mg; Budesonide/Formoterol inhaled bid; Albuterol. She reported smoking six cigarettes daily She is 5'3" and 240lbs. BP: 136/68. She appeared to be in no acute distress with normal gait and stance. She used no assistive device. She could walk on heels/toes with difficulty and performed ½ squat. She needed no help changing for exam, getting on/off exam table, and could raise from chair without difficulty. She has scars consistent with burns in the area of [her] right forearm, lumbar spine shows flexion 50 degrees, lateral flexion full bilaterally, pain to palpation of the lumbar spine, seated and supine [straight leg raises] negative bilaterally, full [range of motion] of shoulders, elbows, and wrists bilaterally, full [range of motion] of hips, knees, and ankles bilaterally, and 5/5 strength in all extremities. X-ray of [lumbar spine] showed moderate degenerative change at L2-3 and mild degenerative change at L3-L5 levels.

[Pulmonary function test] was normal. Remainder of exam was [within normal limits].

(T. 65); *see also* (T. 282-85).

In his decision, the ALJ cited to treatment notes stating that Tammie P. "has full range of motion and full strength in the lower extremities." (T. 22) citing (T. 257, 304). "Other records describe full strength of the upper and lower extremities." (*Id.*) citing (T. 292); *see also* (T. 261, 303-04). X-rays found only mild-to-moderate degenerative changes. (T. 286, 306). And even though Tammie P. had negative straight leg raise testing bilaterally, she has not received injections or undergone surgery, and her course of treatment has been very conservative. (T. 284)

The ALJ also noted that, despite her impairments, records from 2021 describe Tammie P. "as healthy appearing and well developed." (T. 22, 257, 260, 264, 267, 269, 292, 296, 300, 303). Her treatment providers have also encouraged regular exercise: 30 minutes at a time, five days per week. (T. 22, 261, 265, 271, 292-93, 297, 300, 304). She also testified she sometimes walks to the park. (T. 36).

Finally, Tammie P. asserts that "the ALJ referenced the isolated normal findings contained in Dr. Fkiaras' consultative examination, but

10

the ALJ did not compare the positive findings or Dr. Fkiaras' ultimate conclusions when assessing the PAMFs. (Pl. Br. at 17). But in the ALJ's assessment of Dr. Zito's opinion, he cited to Dr. Fkiaras findings three times, stating they were consistent with Dr. Zito's opinion.

So considering all the evidence, the Court recommends finding that the ALJ properly performed the supportability and consistency analysis on Dr. Zito's opinion. *See* 20 C.F.R. §§ 404.1520c(c)(3), (4). The ALJ found these opinions consistent with, and supported by Tammie P.'s treatment records, her statements, and the record as a whole. Accordingly, the Court finds no error in the ALJ's finding that his opinion was persuasive.

### B. Consultative Examiner John Fkiaras, M.D.

On October 12, 2022, Dr. Fkiaras consultatively examined Tammie P. (T. 282-85). She endorsed low back and bilateral knee pain. (T. 282). Dr. Fkiaras diagnosed Tammie P. with low back pain, bilateral knee pain, chronic obstructive pulmonary disease, hypertension, hypothyroidism, and history of right upper extremity burns. (T. 285). He noted that Tammie P.'s prognosis was fair. (*Id.*). Dr. Fkiaras opined that Tammie P. had moderate to marked limitations on lifting, carrying, pushing, pulling, squatting, and bending. (*Id.*). He also opined

that Tammie P. has moderate limitation on standing and sitting for extended periods, and should avoid smoke, dust, and known respiratory irritants. (*Id.*). Ultimately, the ALJ found Dr. Fkiaras' opinion less persuasive because the opinion is not consistent or supported by the record. (T. 22).

Tammie P. argues that the ALJ's supportability and consistency analysis of Dr. Fkiaras' opinion is flawed. (Pl. Br. at 8-13). Specifically, Tammie P. alleges that "the ALJ improperly characterized the range of motion findings as near normal and presumed moderated diagnostic findings were insufficient to support the limitations. The ALJ was not qualified to make the determination that the examination findings support different abilities than assessed by the actual author of the treatment notes." (Pl. Br. at 9) (cleaned up).

The Court finds this argument meritless. As an initial matter, the ALJ properly articulated his consideration of the medical opinion evidence and did not merely rely on his own judgment in doing so. To be sure, "ALJs may not substitute their own judgment for competent medical opinion." *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017). But that is not what

happened here. The ALJ cited to the moderate diagnostic imaging findings in his discussion of both Dr. Zito's and Dr. Fkiaras' opinions as support to show that it is consistent with the rest of the record that Tammie P. has no more than moderate limitations. (T. 21, 22). In other words, the ALJ found Dr. Fkiaras' moderate limitations persuasive, but his marked limitations less persuasive because his own testing found no more than moderate limitations. *See* (T. 22, 286).

"To analyze supportability, the ALJ must conduct an inquiry confined to the medical source's own record that focuses on how well a medical source supported and explained their opinion." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. Jan. 29, 2021). Here, the ALJ noted that the examination found no more than moderate issues, therefore the marked limitations are unsupported. (T. 22).

During the examination, Tammie P. stated that she had low back pain since 2007 and bilateral knee pain for the past three years, but over-the-counter medications provide mild pain relief. (T. 282). She told Dr. Fkiaras that she could sit for 20 minutes, stand for 20 minutes, lift five pounds, walk 15 to 20 minutes, and climb five steps of stairs. (T.

282). She stated she was able to cook, clean, do laundry, shops twice a week; and she can shower three times a week and dress daily. (T. 283).

As Dr. Fkiaras noted, Tammie P. appeared to be in no acute distress. (*Id*.). Her gait was normal. (*Id*.). She could walk on her heels and toes with difficulty. (*Id*.) She could squat halfway, and her stance was normal. (*Id*.). She needed no help changing for the examination or getting on and off the examination table. (*Id*.). She was also able to rise from a chair without difficulty. (*Id*.).

Additionally, Tammie P.'s cervical spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement. (T. 284). There was no scoliosis, kyphosis, or abnormality in the thoracic spine. (*Id*.). Tammie P.'s lumbar spine showed flexion at 50 degrees[5] and full lateral flexion bilaterally. (*Id*.). She had pain to palpation of the lumbar spine. (*Id*.) Tammie P. had negative straight leg raises, both supine and seated. (*Id*.)  She had full range of motion in her shoulders, elbows, and wrists bilaterally. (*Id*.). She had full range of motion in her hips, knees, and ankles bilaterally. (*Id*.). She had no joint deformity, subluxations,

---

[5] Defendant's brief notes 50 degree as the average healthy range of motion for lumbar flexion. (Def. Br. at 6).

contractures, or ankylosis. (*Id*.). She has five out of five strength in her upper and lower extremities. (*Id*.).

Thus, contrary to Tammie P.'s assertion, the ALJ adequately articulated the supportability factor, and the record supports the ALJ's finding. *See Tara M. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023) (finding the ALJ's review of supportability sufficient where the ALJ stated the doctor's opinion was only "somewhat supported by [his] examination report," as the degree of some limitations recommended were not supported by the doctor's own objective findings) (cleaned up).

In his decision, the ALJ also assessed medical opinion evidence from multiple providers, including Dr. Fkiaras. In concluding that Dr. Fkiaras' opinion was less persuasive, contrary to Tammie P.'s contentions, the ALJ pointed to Tammie P.'s longitudinal medical record and other physical examination findings, the findings during the consultative evaluation, Tammie P.'s generally conservative treatment, and her testimony. All of this evidence supported his conclusion. This consistency analysis comported with the required regulatory factors.

Reading his decision as a whole, the ALJ cited to numerous treatment records to support his determination. (T. 21-22). And these records showed that Dr. Fkiaras' opined limitations were greater than warranted. For example, the ALJ cited to diagnostic testing finding "no more than moderate issues." (T. 22) (citing T. 286, 306). As noted above, treatment records consistently documented Tammie P. to have full to nearly full range of motion in the spine. (T. 257, 284, 292, 304). She had full strength of the upper and lower extremities. (T. 257, 261, 292, 303-04). Tammie P. had no sensory deficits. (T. 257, 261, 264, 267, 271, 284, 292, 296). It was appropriate for the ALJ to consider the clinical test results and lack of objective findings to support his determination to only partially credit Dr. Fkiaras' opinions. *See Michael M. v. Comm'r of Soc. Sec.*, No. 5:23-CV-752 (DNH/DJS), 2024 WL 4110740, at *3 (N.D.N.Y Aug. 15, 2024) (cleaned up) ("[T]he ALJ was entitled to rely on the lack of any evidence suggesting Plaintiff has an impairment.").

Additionally, the ALJ's consideration of Tammie P.'s relatively conservative treatment and reported improvement with medication was also appropriate consideration in assessing the evidence. (T. 22). *See*

16

*Jeffrey R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00709-EAW, 2023 WL 2581539, at *5 (W.D.N.Y. Mar. 21, 2023) ("[T]he ALJ here properly considered the impact of plaintiff's medication intake on his symptoms.").

Taking all the relevant factors into account, the ALJ marshaled substantial evidence to find  Dr. Zito's opinion persuasive. ALJs are "entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Comm'r of Soc. Sec.*, No. 1:15-CV-0352 (GTS/WBC), 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016).

\* \* \*

Tammie P. argues "that the ALJ failed to identify other evidence consistent with the RFC finding," so "the resulting RFC finding is unsupported by substantial evidence, and remand is required." (Pl. Br. at 17). The ALJ is not required to tether an RFC assessment to a medical opinion, nor is an ALJ's RFC determination fatally flawed merely because it was formulated absent a medical opinion. RFC findings are administrative in nature, not medical, and its

determination is within the province of the ALJ. 20 C.F.R. §§
404.1527(d)(2), 416.927(d)(2). It is the ALJ's responsibility to determine
Tammie P.'s RFC based on all the evidence in the record including, but
not limited to, statements provided by medical sources. *Id.* §§
404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3),
416.946(c). Indeed, where "the record contains sufficient evidence from
which an ALJ can assess the [plaintiff's] residual functional capacity . . .
a medical source statement or formal medical opinion is not necessarily
required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir.
2017) (cleaned up).

To the extent Tammie P. argues that her standing walking, lifting
and carrying limitations are not supported for light work, that
argument is rejected. (Pl. Br. at 13). Light work requires the ability to
lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and
walk for up to 6 hours a day, and sit for up to two hours. *See* 20 C.F.R. §
404.1567(b); Program Policy Statement, Titles II and XVI: Determining
Capacity To Do Other Work- The Medical-Vocational Rules of Appendix
2, SSR 83-10, 1983 WL 31251, at *5-6. The ALJ's finding that Tammie
P. had the RFC to perform light work was supported by physical

examinations where physicians reported Tammie P. had full range of motion and strength in her upper and lower extremities. (T. 22) citing (257, 261, 292, 303-04). Additionally, "a number of courts have found that 'moderate' limitations of standing, walking, sitting, and lifting are consistent with the ability to do light work." *Brad Leroy B. v. Comm'r of Soc. Sec.*, No. 1:24-cv-09490-GRJ, 2025 WL 2371183 at *6 (S.D.N.Y. Aug. 14, 2025) (quoting *Jordan v. Comm'r of Soc. Sec.*, No. 16-CV-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (collecting cases).

Moreover, ALJs are free to "choose between properly submitted medical opinions." *Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-cv-00485-(TWD), 2023 WL 4972707 at *14 (N.D.N.Y. Aug. 3, 2023) (cleaned up). He is also entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole and need not perfectly correspond with any of the opinions of the medical sources. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Here, the ALJ resolved conflicts between various medical opinions by finding persuasive those portions of the medical opinions deemed most consistent with Tammie P.'s treatment record and activities. (T. 20-22).

19

In doing so, the ALJ appropriately evaluated the conflicting medical evidence and made an RFC finding consistent with the overall record. *Id.* Therefore, the Court finds the ALJ properly considered and weighed the medical opinions and her subjective allegations.

* * *

**C. Evaluation of Symptoms**

Lastly, Tammie P. argues the ALJ did not discuss the relevant factors after finding her symptoms were not substantiated by objective medical evidence and failed to discuss her activities of daily living and allegations of limitations. (Pl. Br. at 19). But, an ALJ need not recite every piece of evidence that contributed to the decision so long as the record permits courts "to glean the rationale of an ALJ's decision." *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). And beyond that, Tammie P. concedes that the ALJ noted her alleged impairments and testimony elsewhere in his decision. (*Id.* at 19, 20). All in all, this argument is unavailing.

The ALJ are required to consider all available evidence, including the claimant's history, medical signs and laboratory findings, and statements from the claimant, the claimant's treating or non-treating

source, or other persons about how the symptoms affect the claimant. 20 C.F.R. § 416.9299(c)(1). Objective medical evidence is useful, but the ALJ will not reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id*. § 416.929(c)(2). But, if a claimant's statements about their symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding. *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

While it is "not sufficient for the [ALJ] to make a single conclusory statement that" the claimant is not credible or simply recite the relevant factors, remand is not required where "the evidence of the record permits us to glean the rational of an ALJ's decision." *Id*. at *2; *Mongeur v. Heckler*, 722 F.2d 1040. Here, the ALJ concluded that Tammie P.'s medical impairments could cause the symptoms she alleged, but declined to credit her testimony regarding the intensity, persistence, and limiting effect of the symptoms to the extent they were inconsistent with the medical evidence, including the medical assessments and treatment notes. (T. 21-22). While the ALJ did not

discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his evaluation of symptoms directly following this determination regarding Tammie P.'s back and COPD. (T. 22). Thus, the ALJ thoroughly explained his evaluation of Tammie P.'s symptoms and the record evidence permits the Court to glean the ALJ's rationale, and the ALJ's failure to discuss factors not relevant to his evaluation does not require remand.

* * *

Considering the above, the Court finds the ALJ applied the correct legal standards, and substantial evidence supports his decision. Remand is therefore not warranted.

## VII. CONCLUSION

**WHEREFORE,** for the reasons stated herein, it is hereby

**RECOMMENDED**, that the Tammie P.'s motion for judgment on the pleadings (Dkt. 13) be **DENIED;** and it is further

**RECOMMENDED**, that Defendant's motion for judgment on the pleadings (Dkt. 19) be **GRANTED;** and it is further

**RECOMMENDED** that the Commissioner's decision denying Tammie P. benefits be **AFFIRMED**.

August 26, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge